**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**SOUTHERN DIVISION**
**AT LONDON**

**CIVIL ACTION NO. 16-146-DLB**

**NATIONWIDE MUTUAL INSURANCE COMPANY**                                **PLAINTIFF**


**V.**                             **MEMORANDUM OPINION AND ORDER**


**VETERANS OF FOREIGN WARS**
**OF THE UNITED STATES, et al.**                                         **DEFENDANTS**

*** *** *** *** ***

## I.      INTRODUCTION

Plaintiff Nationwide Mutual Insurance Company ("Nationwide") brought this action

pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, against Defendants Pierce

Dant Hamblin Post No. 3167 Veterans of Foreign Wars of the Unites States, Incorporated

("VFW") and Margie Woodruff, as administratrix of the Estate of Richard Perkins.

Nationwide seeks a declaration that it has no obligation to defend or indemnify Defendant

VFW in an underlying lawsuit filed by Woodruff.  (Doc. # 1).  Before reaching the

substantive issue, the Court must consider whether to exercise its discretionary jurisdiction

under the Declaratory Judgment Act ("Section 2201").  To that end, Defendants Woodruff

and VFW have filed Motions to Dismiss, or in the alternative, to abstain.[1]  (Docs. # 8 and

12).  Having reviewed the parties' briefings, and carefully considering the issues in this

---

[1] Although Defendants filed separate motions to dismiss, they are identical in substance.
(*See* Docs. # 8 and 12).  Accordingly, any reference to one of the motions may be construed as a
reference to both motions, collectively.

case, the Court finds it appropriate to decline jurisdiction in this case pursuant to Section 2201.  Accordingly, Nationwide's Complaint will be dismissed without prejudice.

## II.       FACTUAL AND PROCEDURAL BACKGROUND

The Pierce Dant Hamblin Post No. 3167 VFW is a non-profit corporation located in Williamsburg, Kentucky.  (Doc. # 8-3 at ¶ 3).  On or about April 13, 2016, Adam Childress was served alcoholic beverages while at the VFW.  *Id.* at ¶ 6.  Despite being intoxicated, Childress attempted to drive home from the VFW.  *Id.* at ¶ 10.  On route home, Childress swerved, and his vehicle struck a pedestrian, Richard Perkins.  *Id.*  Perkins died as a result of his injuries.  *Id.*

Woodruff, as administratrix of Perkins's estate, sued both Childress and the VFW in Whitley County Circuit Court.  *Id.*  Woodruff brought negligence claims against the VFW pursuant to Kentucky's "dram shop" statute, KRS § 413.241.  *Id.* at ¶¶ 20-26.  Specifically, Woodruff alleges that VFW negligently trained and/or supervised its members, employees, or agents who sold and/or served alcohol to Childress on April 13, 2016, and that the agents were negligent because they served alcohol to Childress when he was visibly intoxicated.  *Id.*

The VFW has multiple insurance policies through Nationwide.  (Doc. # 1 at ¶ 25). Nationwide is defending VFW in the underlying action pursuant to a Commercial General Liability ("CGL") policy and Liquor Liability policy.  *Id.* at ¶¶ 3-4.  The defense Nationwide is providing to VFW in the underlying action is subject to a reservation of rights letter dated May 2, 2016.  *Id.* at ¶ 36.

Nationwide filed the instant declaratory judgment action on July 18, 2016.  *Id.* According to the complaint, Nationwide does not have a duty to defend or indemnify VFW for any claims asserted in the underlying action.  *Id.*  First, Nationwide argues that the "Liquor Liability" exclusion contained in the CGL applies to the underlying claims, thus precluding coverage.  *Id.* at ¶ 59.  Next, Nationwide claims that the "Liquor License Not in Effect" exclusion prohibits coverage under the Liquor Liability Coverage Form.[2]  *Id.* at ¶ 66. Finally, Nationwide contends that VFW made a material misrepresentation in its application for Liquor Liability Coverage because it failed to indicate that it did not possess a valid liquor license.  *Id.* ¶¶ 47-50.

Nationwide's position in this matter implicates the following provisions and definitions within the CGL policy:

Section I – Coverages
...

2.      Exclusions
This insurance does not apply to:

a.      Expected Or Intended Injury
"Bodily injury" or "property damage" expected or intended from the standpoint of the insured.  This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

...

c.      Liquor Liability
"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1)     Causing or contributing to the intoxication of any person;

---

[2] VFW admits that it did not have a valid liquor license at the time of the accident resulting in the underlying litigation.  (Doc. # 13 at ¶¶ 33-36).

3

(2)    The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3)    Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverage.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:

(a)    The supervision, hiring, employment, training or monitoring of others by that insured; or

(b)    Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage" involved that which is described in Paragraph (1), (2) or (3) above.

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. For purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

(Doc. # 1-2 at 20).  Nationwide's position also implicates the following provisions from the Liquor Liability Coverage Form:

Section I – Liquor Liability Coverage
...

2.    Exclusions
This insurance does not apply to:
...

d.    Liquor License Not in Effect
"Injury" arising out of any alcoholic beverage sold, served or furnished while any required license is not in effect.

Section IV – Liquor Liability Conditions
...

4

6.      Representations
By accepting this policy, you agree:

    a.    The statements in the Declarations are accurate and complete;
    b.    Those statements are based upon representations you made to us; and
    c.    We have issued this policy in reliance upon your representations.

(Doc. # 1-2 at 35-36, 39).

After Nationwide filed the declaratory judgment action in this Court, Woodruff moved to amend her complaint in Whitley County Circuit Court, naming Nationwide as a defendant. (Doc. # 8-4). The amended complaint seeks a declaration of rights concerning Nationwide's obligation to indemnify VFW, alleges that Nationwide violated the Unfair Claims Settlement Practices Act ("UCSPA") as set forth in KRS § 304.12-230, and claims that Nationwide acted in bad faith.[3]  *Id.* at ¶¶ 25, 28, 32, and 36.

## III.   ANALYSIS

### A.   Standard of Review

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (emphasis added). The Act affords "unique and substantial discretion" in deciding whether to provide declaratory relief. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). Therefore, federal courts are "under no compulsion to exercise jurisdiction." *Brillhart v.*

---

[3] Nationwide moved to dismiss Woodruff's claims in Whitley County Circuit Court. The Whitley Circuit Court entered an Order holding Nationwide's Motion in abeyance pending resolution of the declaratory judgment action presently before this Court.

*Excess Ins. Co. of Am.*, 316 U.S. 491, 494 (1942).  However, the Sixth Circuit has identified

five factors, known as the *Grand Trunk* Factors, for district courts to consider when

deciding whether to exercise jurisdiction under Section 2201:

> (1)　whether the declaratory action would settle the controversy;
>
> (2)　whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;
>
> (3)　whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race for *res judicata*;
>
> (4)　whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach on state jurisdiction; and
>
> (5)　whether there is an alternative remedy which is better or more effective.

*Grand Trunk W. R.R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984);

*Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 554 (6th Cir. 2008).

The five factors outlined above were formulated with three guiding principles in mind:

"efficiency, fairness, and federalism." *Western World Ins. Co. v. Hoey, et al.*, 773 F.3d 755,

759 (6th Cir. 2014).  While courts should balance each factor, the Sixth Circuit has

concluded that the factors are not equally weighted and their "relative weight" depends

heavily on the "underlying considerations of efficiency, fairness, and federalism," which will

vary depending on the circumstances of each case. *Id*.  As illustrated by the Sixth Circuit

in *Hoey*, "a relatively efficient declaratory judgment (factors 1, 2, and 5) could very well be

inappropriate if hearing the case would be unfair (factor 3) or would offend the bundle of

principles we generally label 'federalism' (factor 4)." *Id*.  Therefore, "the essential question

is always whether a district court has taken a good look at the issue and engaged in a

reasonable analysis of whether issuing a declaration would be useful and fair." *Id*.

6

### B.    *Grand Trunk* Factors

#### 1.    *Will the declaratory action settle the controversy?*

There is a split in authority within the Sixth Circuit regarding the first factor.  One line of cases holds that "a declaratory relief action can settle the insurance coverage controversy not being addressed in state court, even though it will not help resolve the underlying state court action." *Scottsdale*, 513 F.3d at 555 (citing *Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 454 (6th Cir. 2003); *Allstate Ins. Co. v. Green*, 825 F.2d 1061, 1066 (6th Cir. 1987)).  A separate line of cases concluded the opposite; that "while such declaratory actions might clarify the legal relationship between the insurer and the insured, they do not settle the ultimate controversy between the parties which is ongoing in state court." *Id.* (citing *Travelers Indem. Co. v. Bowling Green Prof'l Assoc., PLC*, 495 F.3d 266, 272 (6th Cir. 2007); *Bituminous Cas. Corp. v. J & L Lumber Co.*, 373 F.3d 807, 814 (6th Cir. 2004)).

The inconsistency in these decisions can be reconciled by considering their distinct factual differences.  In *Northland*, "the plaintiff was not a party to the state court action and neither the scope of the insurance coverage nor the obligation to defend was before the state court." *Scottsdale*, 513 F.3d. at 556 (internal quotations omitted).  On the other hand, "the insurance coverage controversy" in *Bituminous* "rested on a fact-based question of state law regarding whether the plaintiff in the state action was actually an employee of the defendant," which was "already being considered in two separate state court proceedings." *Id.* at 555-56.  There, the court "registered [its] concern that the plaintiff in the state tort action 'was not made a party to the declaratory judgment action [and thus] any judgment in the federal court action would not be binding as to him and could not be res judicata in

the tort action.'" *Id.* (quoting *Bituminous*, 373 F.3d at 814).

Here, the party who brought this declaratory judgment action has been named in the underlying state court matter, and the plaintiff in the state court action was made a party to this declaratory judgment action.  Only one party – Childress – has not been named in this action.  With these facts in mind, the Court must examine whether the insurance coverage dispute depends on "fact-based questions of state law," and if so, whether those questions are likely to be addressed by the Whitley County Circuit Court.

Nationwide contends that the coverage dispute can be settled as a matter of law.  As Nationwide frames the dispute, the CGL policy clearly excludes coverage, because VFW's liability results from "causing or contributing to the intoxication" of Childress.  Thus, according to Nationwide, VFW could only be covered under the Liquor Liability policy.  And it does not owe VFW a defense or indemnity under the Liquor Liability policy, because VFW did not hold a valid liquor license at the time of the incident.  Were the Court to assume Nationwide's description of the case, then it would be able to settle the insurance coverage issue as a matter of law.   However, Woodruff and VFW raise arguments that call into question a number of factual issues.   According to Defendants, the "Liquor Liability" exclusion in the CGL policy does not apply to VFW, because VFW was not "in the business" of selling alcoholic beverages.

The CGL policy excludes coverage for liability resulting from the insured "causing or contributing to the intoxication of any person."  The exclusion goes on to state that it applies only if the insured was "in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages."  *Id.*  The policy does not define what it means to be "in the business of" selling alcohol.

8

Considering the parties' arguments, the Court finds that the insurance coverage dispute does raise a number of factual questions. To provide the declaratory relief requested, the Court would have to determine whether VFW was "in the business" of selling alcoholic beverages. This analysis would raise fact-based questions of state law, and there is a strong possibility that many of the same factual questions would also be addressed in the underlying state court action. Specifically, it is concerning that Childress – the primary tortfeasor in the state action – is not a party to this action, and any judgment from this Court would not be binding as to him in the underlying tort action.[4] Thus, consistent with the Sixth Circuit's holding in *Bituminous*, the Court finds that a declaratory judgment in this matter would not settle the controversy. Accordingly, the first factor weighs against exercising jurisdiction.

### 2.    *Will the declaratory action clarify the legal relations at issue?*

A split also exists among Sixth Circuit precedent regarding the second factor. The two lines of precedent conflict over whether "the district court's decision must only clarify the legal relations presented in the declaratory judgment action or whether it must also clarify the legal relations in the underlying state action." *Scottsdale*, 513 F.3d at 558. While the *Scottsdale* court did not definitively resolve this conflict, the court found "the former line of precedent to be more persuasive than the latter." *Id.* Thus, the court focused on "the

---

[4] Under Kentucky's dram shop statute, VFW can only be secondarily liable to Woodruff, and will be entitled to indemnity against Childress for any damages it may be required to pay to Woodruff should it be found liable. *See DeStock No. 14, Inc. v. Logsdon*, 993 S.W.2d 952, 957-58 (Ky. 1999). Thus, Childress will also be affected by the determination of whether or not the dram shop statute applies to VFW, and may raise questions regarding whether VFW was "in the business" of selling alcoholic beverages. While it is not certain that these factual questions will be raised in state court, it would be unwise for this Court to accept jurisdiction when there is a strong possibility that they could be raised by a state-court defendant not party to this action.

ability of the federal declaratory judgment to resolve, once and finally, the question of the insurance indemnity obligation of the insurer." *Id.*   The court also explained that a declaratory action need not clarify the legal relations in the underlying state litigation, so long as it does not "create any confusion about the resolution of those issues." *Id.*

Although a ruling on the insurance coverage issues would not settle the controversy, it would clarify the legal relations between the parties with respect to the discrete issue presented in this declaratory action.  Woodruff argues that the declaratory action would not serve a useful purpose in clarifying the legal relations, because the parties would still have to litigate Woodruff's bad faith claims against Nationwide in state court.  This argument is unavailing, as Woodruff's bad faith claims are premature.  *See Pryor v. Colony Ins.*, 414 S.W.3d 424, 433 ("[A] third-party claimant may only sue the insurance company under USCPA when coverage is not contested or already established.").  Moreover, the Sixth Circuit has noted that "[w]hile the parties may have other tortious or contractual relationships to clarify in state court, our concern ... is with the ability of the federal declaratory judgment to resolve, once and finally, the question of the insurance indemnity obligation of the insurer."  *Flowers*, 513 F.3d at 557.  Thus, while the state court would be left to resolve other issues,  this Court would be able to clarify the discrete legal relations directly before it.  Accordingly, the second factor weighs in favor of exercising jurisdiction.

### 3. *Is the declaratory remedy being used for the purpose of procedural fencing or to provide an arena for res judicata?*

The third factor attempts to "preclude jurisdiction for declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a natural plaintiff and who seem to have done so for the purpose of acquiring a favorable forum." *Scottsdale*, 513 F.3d

at 558.  However, district courts realize it would be unfair to "deny jurisdiction to a plaintiff who has not 'done any more than choose the jurisdiction of federal rather than state court, a choice given by Congress." *Id.*  Therefore, where the declaratory plaintiff files their action *after* the state court litigation has commenced, there is a presumption that the declaratory plaintiff does not have an "improper motive" which "fueled the filing of [the] action." *Id.*

Nationwide filed this declaratory action *after* the state court litigation had commenced.  Woodruff asserts that because "a more appropriate forum already existed to litigate the issues ... it can be assumed that some degree of procedural fencing is involved." (Doc. # 8-1 at 11).  Relevant case law directly refutes this argument.  There is a presumption that Nationwide did not have an improper motive in filing this action, and Woodruff and VFW have failed to present any evidence to the contrary.  Thus, the third factor weighs in favor of exercising jurisdiction.

### 4.    *Would a declaratory action increase friction between our federal and state courts?*

The fourth factor this Court must examine is "whether accepting jurisdiction would increase friction between federal and state courts." *Scottsdale*, 513 F.3d at 559.  Although "the mere existence of a state court proceeding is not determinative of improper federal encroachment upon state jurisdiction," "where another suit involving the same parties and presenting opportunity for ventilation of the same state law issues is pending in state court, a district court might be indulging in 'gratuitous interference,' if it permitted the federal declaratory action to proceed." *Id.* at 559-60 (citing *Allstate Ins. Co. v. Green*, 825 F.2d 1061, 1067 (6th Cir. 1987) (*abrogated on other grounds by Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964 (6th Cir. 2000)); *Wilton v. Seven Falls Co.*, 515 U.S. 277, 283 (1995)).

Therefore, "to determine whether the exercise of jurisdiction would increase friction between federal and state courts," the Court must consider three additional sub-factors:

(1)   whether the underlying factual issues are important to an informed resolution of the case;

(2)   whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and

(3)   whether there is a close nexus between underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*Id.* at 560 (citing *Bituminous*, 373 F.3d at 814-15).

The first sub-factor seeks to determine "whether the state court's resolution of the factual issues in the case is necessary for the district court's resolution of the declaratory judgment action." *Id.* at 560.  In cases seeking a declaration regarding "the scope of insurance coverage," the Sixth Circuit has "recognized that such questions can sometimes be resolved as a matter of law and do not require factual findings." *Id.* (citing *Northland*, 327 F.3d at 454; *Green*, 825 F.3d at 1067).  In other cases, "resolution of the issues raised in federal court will require making factual findings that might conflict with similar findings made by the state court." *Id.* (citing *Travelers*, 495 F.3d at 272).  When cases require the federal court and state court to make similar factual findings, "the exercise of jurisdiction would be inappropriate." *Id.*

Nationwide contends that this Court's ruling on the declaratory judgment action would not require making factual findings that might conflict with findings of the state court. (Doc. # 15 at 13).  Its conclusory claim is unconvincing. To determine the scope of insurance coverage in this case, the Court would have to engage in a number of factual

inquiries. For example, the Court must determine whether VFW was "in the business of selling alcohol" as to preclude coverage under the CGL. A Kentucky Court considering this question in a similar case looked to facts developed in the record relating to the VFW post, including membership, revenue, purpose, and alcohol service protocol. *Auto-Owners Ins. Co. v. VFW Post 5906*, 276 S.W.3d 298 (Ky. App. 2009). These same types of factual questions may be relevant to the state court's determination regarding dram shop liability. In a breach of contract case considering whether a racetrack was "in the business" of selling alcohol, the Sixth Circuit noted that the facts at issue "relate[d] directly to the circumstances under which Speedway would be liable to third persons who are injured by the sale of alcoholic beverages to underage persons or persons whom a reasonable person would know are already intoxicated at the time of serving." *KSPED LLC v. Virginia Sur. Co., Inc.*, 567 Fed. App'x. 377, 385 (6th Cir. 2014) (citing KRS § 413.241(2)). Accordingly, this Court would be required to make factual findings that may conflict with similar findings made by the state court. Therefore, this sub-factor weighs against exercising jurisdiction.

The second sub-factor "focuses on which court, federal or state, is in a better position to resolve the issues in the declaratory action." *Scottsdale*, 513 F.3d at 560. "Generally, state courts are better situated than federal courts to resolve disputes over state regulated insurance contracts and novel questions of state law." *Arrowood Indem. Co.*, 2015 WL 136107, at *7 (E.D. Ky. Jan. 9, 2015) (citing *Travelers*, 495 F.3d at 272; *Bituminous*, 373 F.3d at 815-16). "However, when the insurance company is not a party to the state action, and the scope of coverage or an obligation to defend are not before the state court, 'a decision by the district court on these issues would not offend principles of comity.'" *Id.* (citing *Scottsdale*, 513 F.3d at 50 (quoting *Northland Ins. Co.*, 327 F.3d at

454)).

Nationwide has been named in the underlying state action, thus giving the state court the opportunity to resolve these issues.  And, the state court is in the better position to resolve the dispute over the insurance contract.  This is especially true in this case, where Kentucky case law governing the issue is scarce.  In the one Kentucky case interpreting the phrase "in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages," the Kentucky Court of Appeals engaged in a fact-intensive inquiry to determine whether the contract exclusion applied.  *See Auto-Owners*, 276 S.W.3d 298 (Ky. Ct. App. 2009).  Thus, this is not a case where "the state law is clear and [] the state court is not considering the issues." *See Flowers*, 513 F.3d at 560 (placing less weight on this sub-factor when the state law was clear and the declaratory judgment was not before the state court).  Accordingly, this sub-factor weighs against exercising jurisdiction.

Finally, the third sub-factor asks "whether the issue in the federal action implicates important state policies and is, thus, more appropriately considered in state court. *Scottsdale*, 513 F.3d at 561.  The Sixth Circuit has recognized that "states regulate insurance companies for the protection of their residents, and state courts are best situated to identify and enforce the public policies that form the foundation of such regulation." *Id.* Therefore, insurance contract disputes typically consider "questions of state law with which the Kentucky state courts are more familiar and, therefore, better able to resolve." *Id.* While it is true that "not all cases involving insurance contract interpretation involve such important fundamental state policies that federal courts should decline to consider them," this case involves factual questions that cannot be easily settled as a matter of law.

Moreover, the interpretation of this contract seems particularly oriented toward important state policies, as it implicates factual questions related to Kentucky's dram shop laws. Therefore, the third sub-factor weighs against exercising jurisdiction.

All three sub-factors weigh against this Court exercising jurisdiction. Thus, taken as a whole, the fourth *Grand Trunk* factor weighs heavily against exercising jurisdiction.

### 5.      *Is there an alternative remedy that is better or more effective?*

The final factor the Court must consider is "the availability of alternative remedies." *Scottsdale*, 513 F.3d at 561. If "an alternative remedy is better or more effective," a district court should "deny declaratory relief." *Grand Trunk*, 746 F.2d at 326. There are typically two alternative remedies for a federal declaratory plaintiff: (1) seek a declaratory judgment in Kentucky state court pursuant to Ky. Rev. Stat. Ann. § 418.040 or (2) file an indemnity action at the conclusion of the state court lawsuit. *See Scottsdale*, 513 F.3d at 562. To determine whether either of these remedies is "better or more effective," the Court's inquiry "must be fact specific, involving consideration of the whole package of options available to the federal declaratory plaintiff." *Id.*

Nationwide contends that the alternative remedies available in state court are "at best equal," and that declining jurisdiction would "infringe on Nationwide's ability to select the forum it wished to hear this declaratory action." (Doc. # 15 at 15-16). While the Court is mindful of Nationwide's interest in selecting the forum of its choice, that interest alone is not sufficient to make this Court the "better" forum. This Court has previously found that in cases where a federal declaration could create a significant amount of friction between the state and federal court,  "the most effective remedy is the one that is likely to endure–and [] that is a declaratory judgment rendered by a Kentucky state court."

15

*Arrowood Indem. Co.*, 2015 WL 136107, at *9.  Therefore, the fifth factor weighs slightly against this Court exercising jurisdiction, and is at best neutral.

### C.        Balancing the Factors

The Sixth Circuit has "never indicated how these *Grand Trunk* factors should be balanced," but has advised that the factors are not equally weighted and their "relative weight" depends heavily on the "underlying considerations of efficiency, fairness, and federalism," which will vary depending on the circumstances of each case. *Hoey*, 773 F.3d at 759.  In this case, the first, fourth, and fifth factors weigh against exercising jurisdiction, while the second factor weighs in favor of exercising jurisdiction, and the third factor is effectively neutral.  Keeping in mind the "underlying considerations of efficiency, fairness, and federalism," the Court finds it appropriate to decline jurisdiction in this matter.

## IV.    CONCLUSION

Accordingly, for the reasons stated herein,

**IT IS ORDERED** as follows:

(1)      Defendants' Motions to Dismiss (Docs. # 8 and 12) are **GRANTED**; and

(2)      This matter is hereby **DISMISSED without prejudice** and **STRICKEN** from the Court's active docket.

This 27th day of March, 2017.



Signed By:
David L. Bunning
United States District Judge

K:\DATA\ORDERS\London\2016\16-146 MOO.wpd